UNITED STATES (CHABOLLA v.).  See Case No. 2,566.

## Case No. 14,769.

### UNITED STATES v. CHABOYA.

[Cal. Law J. & Lit. Rev. 71.]

District Court, N. D. California.  Oct. 31, 1862.

MEXICAN LAND GRANT—ABSENCE OF GRANT—NOTORIOUS AND EXCLUSIVE POSSESSION—PROOFS.

1. To entitle a claim to confirmation where there has been no grant, clear evidence must be presented of a long-continued, notorious, and exclusive possession under claim of ownership of a tract of land of definite boundaries, and of the recognition of the proprietory and possessory rights of the claimant by his neighbors and by the authorities of the former government.

2. The proofs in this case fail to show an exclusive occupation or possession by the claimant of the tract claimed, or any general recognition of his rights thereto, as proprietor, by his neighbors, or by the Mexican authorities.

The claim in this case was originally confirmed on uncontradicted testimony, which seemed to establish beyond doubt the occupation and possession of the land, by permission of the Mexican authorities, since the year 1837. [See Case No. 14,770.] The cause having been opened for further proofs as to the boundaries and extent of the land occupied by [Pedro] Chaboya, additional testimony was taken. On the second hearing, it was objected that the claim had not been presented to the board, but that the petition and proofs presented to that tribunal, and the decree from which the appeal had been taken, referred to another tract of land. On examination, this objection was found to be well taken, and the cause was dismissed for want of jurisdiction. Application for relief was thereupon made to congress, and a law was passed empowering this court to take jurisdiction of the cause, and to decide the same on its merits. It has therefore been submitted on the testimony originally taken, and also on that taken under the order of the court reopening the case for further proofs on the subject of boundaries.

It appears that, in the year 1837, Pedro Chaboya entered upon a piece of land adjoining the pueblo of San Jose. Whether this entry was first made by permission of the authorities of the pueblo is not clear. Pico swears that Chaboya occupied the land by permission of the ayuntamiento, and Fernandez states that "the judge loaned it to him." But these witnesses may, very possibly, refer to a subsequent permission to occupy, given by the alcalde, which will hereafter be noticed. The land upon which Chaboya settled was universally recognized as part of the "ejidos,"

or common lands, of the pueblo, and his occupation of it appears to have provoked immediate opposition on the part of a considerable number of the pobladores. On the 21st of December, 1837, Manuel Pinto, J. Anto. Sepulveda, Dolores Pacheco, and others presented to the ayuntamiento a remonstrance against putting certain persons in possession of sitios which, in the opinion of the remonstrants, were the common property of the pueblo. Chaboya, notwithstanding this remonstrance, appears to have continued in possession, and on the 29th of June, 1838, the same persons again address the ayuntamiento on the subject. In this last document the remonstrants state that, "having learned that Pedro Chaboya has presented a memorial soliciting the place named La Posa, for the purpose of building thereon a house and corral, and for the purpose of agriculture, although he agrees to inclose his fields, it is not our pleasure that the said señor, or any one else, should occupy said places, as they are so close to this community; the water and pastures, in the most rigorous season of the year being the most abundant, and very necessary for the use of our cattle and horses. It is, therefore, our desire that said land may be preserved for the community without there being placed upon the same the buildings or establishments of any individual. If the said Chaboya has a mind to unite himself to this community, it will be more agreeable to us that he should make his house in the pueblo, etc. The said place (paraje) of La Posa has for some time been occupied by Pablo Parra, and not without much prejudice to this community. One of the reasons is that his fields are without fences, for which reason our cattle cannot be left in the neighborhood of said place. And as a further reason why he should not occupy said place, information was taken by the present juez de campo which will give sufficient grounds for the removal of said place."

From this document, it would seem that Chaboya had petitioned the ayuntamiento for the place called La Posa for the purpose of building thereon a house and corral, and that he had offered to inclose his fields, so that his cultivations might not prevent the cattle of the inhabitants of the pueblo from resorting to the spring for water. This the remonstrants opposed. It appears, also, that the place had already been occupied for some time by one Parra, to the great prejudice of the community.

BY THE COURT. The testimony, in some particulars, confirms the statements of the remonstrance. It is stated, by several witnesses, that the land near the Posa was occupied by Parra, who built a small house, covered with tules and plastered with mud, into which Chaboya moved when it was left by Parra, in consequence of the opposition made by the pueblo to his making a house there. The records do not disclose what reply was made by the ayuntamiento to the remon-

strance of the pobladores. No permission to Chaboya to occupy the land, emanating from the ayuntamiento, is produced, nor is it claimed that any was given. The place called La Posa, or La Posa de San Bautista, is described by nearly all the witnesses as a marsh (cienega), or watering-place for cattle, to which all the stock of the inhabitants of the pueblo resorted. The terms of the remonstrance clearly indicate that the land to which reference was made was not a rancho of one or two leagues in extent, but a piece of ground near the common watering-place of the pueblo, for it states that the "said place" had been occupied for some time by Parra, and it is not pretended that he was ever in occupation of the whole tract up to the limits of the nearest rancheros. The offer of Chaboya to inclose his fields, which is referred to in the remonstrance, and was no doubt contained in his memorial to the ayuntamiento, would also seem to show that he was soliciting a small piece of ground of the ejidos of the pueblo, for the purpose of building on and inclosing it. It does not appear, however, that Chaboya was expelled from the place upon which he had thus settled; and on the 10th of May of the ensuing year (1839), Chaboya addressed a petition to the governor, soliciting the grant of a tract of the extent of two leagues, "between the boundaries of the Señores Bernals, the Señor Narvaez, of Joaquin Higuera, Antonio Chaboya, and five hundred varas on the side of the pueblo."

In this petition Chaboya asks the ownership of the land which he actually possesses with his house and cattle, with the permission of the prefecture of the district, and he states that the reclamations addressed against him to the government have been made by only four or five evil-disposed citizens, and are absolutely destitute of justice. The permission given by the prefecture, alluded to in this petition, is not produced; but it would seem, from the terms of Castro's report, to whom the petition was referred, that some proceedings before the prefect had already been had. On the 20th of May the governor directed the prefecture to report, and in the meantime that it should arrange that the interested party should be conserved in the possession in which he finds himself of the land solicited so long as the necessary procedure is going on. On the 25th of May, Castro, the prefect, reports that the petitioner ought to be excused from the usual procedure, as the prefecture had already taken and perhaps dispatched it, conformably to his solicitation, and that the reclamations of the residents of the pueblo, of which he had already informed the governor, really had no other design than to drive Chaboya from the place he had occupied for many years, and were absolutely destitute of justice. It appears that, at the time this report was made, the prefect had already fulfilled the governor's order directing Chaboya to be conserved in his possession. On the 22d of May, two days after the governor's order, Castro ad-

dressed to the alcalde of San Jose the following:

"You are directed not to move the citizens Jose Parra and Pedro Chaboya from the place where they are established until the ejidos of this poblacion are regulated.

"God and liberty.

"S. Juan de Castro, 22d May, 1839.

"Jose Castro.

"Señor Alcalde del Pueblo de Alvarado."

No further proceedings before the governor appear to have been taken, and it is admitted that no title was ever issued to Chaboya. In pursuance of the order of the prefect, an arrangement appears to have been made between the alcalde of the pueblo and Chaboya, which was embodied in the following document:

"Citizen Dolores Pacheco, Justice of the Peace of the Pueblo of San Juan de Alvarado: By superior order of the Hon. prefect of the First district, it is granted to the citizen Pedro Chaboya that he may dwell in the place called La Posa de San Bautista without building any house on foundations, or, still less, erecting substantial structures, for the term of two years, subjecting himself to pay annually six dollars; and he must aid the work of bridges, or any other that may be beneficial to him.        Dolores Pacheco.

"Pedro Chaboya.

"S. Jose G. de Alvarado, February 29, 1840."

As the claim of Chaboya is founded on an alleged equity, arising from a long occupation, by permission of the former government, of a tract of land with definite boundaries, it is essential to ascertain, if it be possible, to what land this permission to occupy referred. We have seen that, in his petition to the governor, Chaboya asks the ownership of what he "actually possesses." In a subsequent part of the petition he gives the boundaries of the land he solicits. They include a tract of about two square leagues in extent. The governor directs the prefect to arrange that the interested party may be conserved in the possession in which he finds himself of the land solicited. Two days afterwards, the prefect orders the alcalde not to remove the citizens, Jose Parra and Pedro Chaboya, from the place where they are established until the ejidos of the poblacion are regulated. It is urged, on the part of the claimant, that this permission to occupy by the governor, enforced by the order of the prefect, referred to the whole tract included within the boundaries mentioned in Chaboya's petition. Such would undoubtedly be the natural construction of the governor's order, and Chaboya's statement that he was actually in possession of the whole tract, by permission of the prefecture, seems to be confirmed by the report of Castro, that the prefecture, in his charge, had already dispatched the proceedings conformably to Chaboya's situation, and that the opposition to him was unjust.

On the other hand, the order of Castro to the alcalde refers not to Chaboya alone, but

also to Parra, the latter of whom is stated, as we have seen in the remonstrance of the residents of the pueblo, to have been occupying the land for some time at the date of Chaboya's memorial to the ayuntamiento, against which they protested. Had the prefect intended that Chaboya should not be disturbed in the possession of the whole tract, or sobrante, between the pueblo and the lands of adjoining rancheros, it is not easy to see why Parra was included in the order to the alcalde. The language, too, of the prefect's order seems to imply merely a prohibition to remove Chaboya and Parra from the particular spot where they had established themselves, rather than a direction that they, or either of them, should be permitted to occupy exclusively a tract nearly two leagues in extent of the common lands of the pueblo. "You shall not remove the citizens, Jose Parra and Pedro Chaboya, from the spot (del punto) where they are established, etc.,"—seeming to indicate that they were merely to be allowed to reside on and cultivate the place which they then occupied. But the license of the alcalde to Chaboya, which the latter signed and apparently accepted, admits of no misconstruction. "By superior order of the Hon. prefect, it is granted to the citizen Pedro Chaboya, that he dwell (que habite) in the place (en el parage) called Posa de San Juan Bautista, without building any house on foundations, or erecting permanent structures, for two years, subjecting himself to pay six dollars annually, etc.". The remonstrance of the pobladores had been directed against the occupation by Chaboya, or any one else, of the land near the Posa, as they desired that no buildings or establishments of any individual should be placed there. The alcalde, however, by order of the prefect, gave to Chaboya the right to reside or dwell on the place for two years; but he was to make no permanent establishment upon it, as it belonged to the ejidos of the pueblo, and it was expected to be included within them when their limits were assigned. That this was the meaning and effect of the license is proved by Jose Fernandez. This witness states that he was secretary of Pacheco, and that he wrote the license; that it was signed by Chaboya; that no boundaries were given to him, the object being merely to give him permission to reside at the edge of the Posa.

It is urged by the counsel for the claimant that the description of the tract on which Chaboya was authorized to dwell as the place ("el parage") called La Posa de San Juan Bautista, shows that a large tract was intended, the term "parage" being equivalent to "sitio," or "rancho." It is true that that expression is frequently used to indicate the large tracts of land solicited by and granted to the former possessors of this country. But it is an expression of very indefinite import, and may as well signify the small piece of ground where Chaboya had his house and inclosures

as the large tract he now claims. The same term is applied in the remonstrance of 1838 to the land occupied by Parra, and it is not pretended that his occupation extended to the whole tract now claimed by Chaboya. Several of the claimant's witnesses say, in general terms, that the place called La Posa de San Bautista, was bounded by the rancho of the Bernals, that of Narvaez, that of Antonio Chaboya, and by the pueblo, but they are unable to describe its boundaries, except by reference to those of the surrounding ranchos. They evidently suppose that it included all the sobrante lying between those ranchos and the pueblo. wherever the boundaries of the former might be. On the other hand, Antonio Bernal, Anto. Ma. Pico, Francisco Bernal, and Jose Fernandez testify that the place known as Posa de San Juan Bautista was a spring or marsh designated by that name, where the cattle of the vecinos of the pueblo went for water; that the name was never applied to any tract of land; that Chaboya never had any recognized limits, and never was recognized as having any greater rights than any other individual vecino. Fernandez, who was almost constantly in office from 1839 to 1850, says that he never knew of any boundaries known and recognized as those of Chaboya. Had there been such they would certainly have been known to him; that the land now claimed by Chaboya was never recognized as his by the pueblo or its authorities, and that he never had possession of the lands within the boundaries now claimed by him. All the witnesses called by the United States concur in the statement that the lands between the three ranchos named in Chaboya's petition to the governor were always recognized as pueblo lands, and even the witnesses for the claimants admit that they were of the ejidos of the pueblo, and used and occupied by the community in common. Even Jose Noriega, though he states that "all that corner" was called La Posa, is unable to say how much land it contained; and he admits (answer to question 42) that "it had no limits."

It is unnecessary further to recapitulate the testimony on this point. After a careful perusal of it, I have been unable to discover that the term Posa de San Juan Bautista was ever applied to a tract of any definite and recognized boundaries. Chaboya himself, though he asks in his petition to the governor for all the land bounded by the ranchos of the Bernals, the Narvaez, Joaquin Higuera, Antonio Chaboya, and five hundred varas at the side of the pueblo, does not apply to the tract solicited the name of La Posa, or any name whatever. The fact seems to be that Chaboya settled near the spring or marsh of that name, much to the dissatisfaction of some of the residents of the pueblo; that he applied for a grant for all the sobrante between the pueblo and the adjoining ranchos, which he failed to obtain, but was, by order of the prefect and license of the alcalde, allowed to continue his residence on the spot where he

had established himself, under certain restrictions. But it is, perhaps, less important to inquire what were the limits of the tract known as La Posa, if any it had, than to ascertain whether Chaboya did in fact occupy and have the exclusive possession of any tract of determinate boundaries, of which he was the recognized owner, or, at least, occupant.

On this, the vital point to be established by him, the proofs are, unfortunately for his pretensions, too plain to admit of doubt. It cannot be contended that Chaboya ever had exclusive possession of the land he now claims, except of such portions as he cultivated and enclosed. The whole tract seems to have been considered and used as the common lands of the pueblo. The cattle of Chaboya were not brought to the Posa until 1842 or 1843, and then only to the number of some six or eight hundred. They undoubtedly ranged over the tract now claimed by him, and also at times wandered upon the adjoining ranchos. But so also did the cattle of the inhabitants of the pueblo, which were many times more numerous. That Chaboya cultivated various pieces of land in the vicinity of the Posa, and elsewhere, is admitted by all the witnesses. But it appears that several others of the vecinos of the pueblo had similar cultivations in various parts of the tract now claimed by him. Fernandez swears (answer 38): "The Posa was always occupied by the cattle of the pueblo during this time (i. e. from 1839). I saw cultivations in front of the Posa, about three hundred varas from it, in 1841, of one Buitron, of Miguel Mesa, of Gervacio Chaboya and Cruz Chaboya. I saw these four there cultivating a good-sized patch of corn and watermelons. The land was open to all as common land, but notice always had to be given to the alcalde." Antonio Bernal testifies that he has known the land since he was old enough to know any thing. That he was not acquainted with the boundaries of Pedro Chaboya. "He had no boundaries." The land was known and used as pueblo lands. "We had cattle there, the Pachecos, the Flores, the Pintos, Jose Feliz, the Sepulvedas and their brothers, the Mesas, and the people of the pueblo of San Jose. The Posa never was a rancho. It had no boundaries. Parra, Francisco Garcia, Sepulveda, Jose Bernal, had cultivations about a mile from Chaboya's house. They sowed there for two years by authority of the pueblo, but were turned out because they interfered with the cattle who came to drink at the Posa. I have attended Rodeos at the neighboring ranchos. Never knew the Posa considered as a rancho belonging to Pedro Chaboya. For all my lifetime I have considered it as belonging to the pueblo. He never had any boundaries respected and known as such by the pueblo or any one else. Jose Noriega, Jose Antonio Alvisu, Justo Larios, Pedro Zepeda, P. Mesa, witnesses for the claimant, all acknowledge that the lands claimed in this case were part of the ejidos or common lands of the pueblo; and most of them admit that they were free to all the vecinos for occupation for pasturage, or cultivation by license of the municipal authorities. Jose Noriega (answer 52) says: "That Pedro Chaboya, having no title, could not have prevented the vecinos of the pueblo from grazing their cattle and cultivating the lands." Question 57: "Could not any of the vecinos who desired to do so have cultivated portions of said land, provided they did not interfere with or trespass upon the lands actually enclosed and cultivated by others?" Answer: "All the world could do it, though some asked the judge." Antonio Alvisu states that the land Chaboya was authorized to occupy, by permission of the pueblo, was all he could occupy with his cattle. He occupied all the plain. The witness admits, however, that the cattle of the people of the pueblo ranged over the same lands. Justo Larios, in reply to question 28, "Would not those lands have been free for the occupation of any of the vecinos of the pueblo, either for the purposes of grazing or cultivation by a license of the municipal authorities, except so far as they were actually occupied and cultivated by other vecinos under a similar license?" says, "I believe so." Pedro Zepeda (answer to question 40) makes the same statement, as does also Pedro Mesa (answers 31 and 32). I am not aware that any witness disputes the fact. That the large extent of land now claimed by Chaboya was not recognized as a rancho belonging to him by any title either legal or equitable, and that his right to the possession of it was not respected by his neighbors, nor admitted by the government or the pueblo, is not only positively stated by numerous witnesses, but in some degree proved by evidence from the archives. In none of the grants of adjoining lands, or of the documents relating thereto, is Chaboya mentioned as a colindante or adjoining occupant. The Narvaez grant was made in 1844, and the pueblo is named as bounding it on the side which adjoins the tract now claimed by Chaboya. If the rights, either possessory or proprietory of Chaboya, were generally known and recognized, it is strange that none of the diseños, the informes, or the grants of the ranchos up to the boundaries of which he now claims, make the slightest allusion to them. It also appears that, in 1844, Chaboya petitioned for two leagues of a tract called "Los Cerritos." This he failed to obtain. But if he was already in possession of a tract of nearly the same extent, his title to which was recognized and respected, his motive for applying for another tract whereon to place the 600 or 800 head of cattle he possessed, is not easily understood.

The statements of several of the witnesses principally relied on by the claimants to show the possession and occupation by Chaboya of the tract claimed are in some respects contradicted by their acts. It appears that, in 1847, the authorities and inhabitants of the pueblo determined to divide up and distribute

their common lands among the vecinos, in lots of 500 acres each. Among these lands was included the tract now claimed by Chaboya. In the proceedings to effect this object. Jose Noriega and Antonio Sunol assisted, so far as appears, without objection or protest against violating the rights of Chaboya, and they each, together with Pedro Zepeda, another of the claimant's witnesses, obtained lots which they have since sold. In 1849 Chaboya himself appears to have protested against an intrusion on his land by Salvador Castro; but he did not then or at any time pretend to have obtained a title, and bases his rights upon what he calls his tranquil occupation for more than ten years, and "the concession made by the political chief under the imposition of a rent," evidently referring to the license to occupy, given by the alcalde by order of the prefect. What the nature of that occupation was we have already seen.

It is urged, on the part of the claimant, that, though other persons cultivated portions of the land claimed by Chaboya, none of them had fences or made settlements upon the land. They all lived in the town. It is not stated, I believe, by any of the witnesses, that these cultivations were fenced; nor is it stated that they were not. As it is admitted that the cattle of the pueblo and of Chaboya ranged over the whole plain, it is extremely improbable that any one would have attempted to make cultivations unless they were protected by a fence. That they resided in the town may be admitted. Chaboya did not, because, contrary to the wishes of the remonstrants in 1838, he had obtained a license to dwell in the place called La Posa. But I am unable to see how this circumstance even tends to show that he was the recognized possessor of all the land lying between the pueblo and the adjoining ranchos. It is also strenuously urged that the fact that the cattle of the pueblo ranged over the land claimed by Chaboya, and that portions were cultivated by others, is of no importance to establish an adverse possession, for the cattle also roamed, and even some cultivations were made, on lands admitted to belong to adjoining ranchos. But the point is not whether the United States have shown an adverse possession by the pueblo, but whether the claimant has shown such an ancient, generally recognized, and undisputed exclusive possession of a tract of land, the boundaries of which were definite and respected by his neighbors, as will, in the admitted absence of a grant, entitle him to confirmation.

It is said that this claim must be confirmed on the authority of U. S. v. Alvisu, 23 How. [64 U. S.] 318. But the cases seem to me radically different. Alvisu applied in 1838 for a grant of land and for permission to occupy while the proceedings were pending. This permission was granted. In 1839, the order of the governor was exhibited to the prefect, who agreed to reserve the land, and that the claimant might occupy it. In 1840,

the administrator of the mission of San Francisco reported that the land was unoccupied, and that it did not belong to the mission or any private person. The testimony showed unequivocally, that Alvisu had occupied the land since 1840, that he had cultivated and built a house upon it. The supreme court, in confirming the claim, observe: "No objection was made or is suggested why he should not have been a colonist of that portion of the public domain. And no suspicion exists unfavorable to the continuity of his possession and claim. He has been recognized as proprietor of this land since 1840." But in the case of Chaboya, strenuous and determined opposition to his obtaining a grant, or even residing on the spot he had selected, was made by the authorities of the pueblo from the beginning. Although Castro reported that this opposition was unjust, yet for some reason the governor refused to grant. And though by order of the governor, the prefecture "arranged" that he should be conserved in his possession, yet the license given by the alcalde and accepted by Chaboya was only a permission to dwell at the spot, without erecting a house or permanent fixtures on the land. It does not purport to be a permission to occupy a large tract with specified boundaries; and the testimony establishes, by a decisive preponderance of proof, that the place or "parage" called La Posa was not known as a rancho of definite limits. The exclusive occupation by Alvisu of the tract of which he obtained possession, and his recognition as its proprietor since 1840, were not disputed. The evidence in this case shows that Chaboya had no exclusive occupation whatever; that the cattle of the pueblo roamed over the land; that portions of it were cultivated by the vecinos; that it was universally regarded as part of the ejidos of the pueblo, and free, as his own witnesses admit, to be occupied by any of the inhabitants, by permission of the judge, for purposes of grazing or cultivation. That his failure to procure a title did not result from indifference or carelessness, may be inferred from the fact that his license to reside at the Posa was obtained nearly a year after the date of his petition to the governor, and that nearly five years afterwards he contested with Pacheco the right of the latter to "Los Cerritos," and, failing in his suit, applied to the governor for a grant of the sobrante of that rancho. It is not to be supposed that he would, when thus anxious to obtain land, have omitted to secure, had it been possible, a grant of the tract for which he petitioned in 1839, and to have quieted forever all disputes between himself and the pueblo, with which, as the witnesses say, "he was always in question."

In all the testimony I have been unable to discover any satisfactory evidence of the recognition of Chaboya's title, either by the government, the pueblo, or the adjoining rancheros. He was not, as Sunol says, molested by the pueblo, but he does not appear ever to

have asserted or attempted to enforce any exclusive rights to the tract now claimed, except to the portions which he, like any other vecino, cultivated and enclosed. With that exception, the land was used and considered as part of the "ejidos," nor does Chaboya ever appear to have given a rodeo, which would necessarily have involved the recognition of his boundaries as against the pueblo and the adjoining rancheros. Had the facts of the case been as supposed when the cause was first before the court, I should have had no hesitation in confirming this claim. But, after a very attentive consideration of the testimony, and with the strongest desire to regard in the most favorable manner the pretensions of the claimant. I have been unable to see how the fact that he was permitted to live at the Posa under the license which has been produced, and the circumstance that he, in common with the inhabitants of the pueblo, permitted his cattle to roam over the plain, and cultivated portions of it, constitute, in the absence of any grant whatever, such an equitable title as either the former or this government is bound to respect and to perfect. The title of Chaboya to the 500-acre lot assigned to him when the pueblo lands were distributed, I understand to be not disputed by the United States. It includes his house and the larger portion of the land enclosed and cultivated by him. For that portion of his claim a decree of confirmation may be entered.

I much regret that, when disposing of the question of jurisdiction, I expressed views of the equitable rights of the claimant which may have induced him to apply to congress for relief. Those views were founded on the original testimony in the cause. The further testimony subsequently taken was not examined or considered, the attention of the court being exclusively directed to the question of jurisdiction. Under the act of congress it has become my duty to consider all the evidence, and decide the case on its merits. This I have endeavored to do unaffected by any previous expressions of opinion, into which, under an imperfect view of the facts of the case, I may have been betrayed.

## Case No. 14,770.

### UNITED STATES v. CHABOYA.

[Hoff. Op. 59; Hoff. Dec. 107.]

District Court, N. D. California. 1859.

MEXICAN LAND GRANT — LONG AND CONTINUOUS OCCUPATION—VALIDITY.